30 F.3d 132
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Stahle LINN, III, Defendant-Appellant.
 No. 93-5816.
 United States Court of Appeals, Fourth Circuit.
 Argued June 10, 1994.
Decided Aug. 3, 1994.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Bryson City. Richard L. Voorhees, Chief District Judge. (CR-92-30)
 Argued: Thomas Kieran Maher, Rudolf & Maher, P.A., Chapel Hill, NC, for appellant.
 Kenneth Davis Bell, Charlotte, NC, for appellee.
 On brief: Jerry W. Miller, U.S. Atty., Asheville, NC, for appellee.
 W.D.N.C.
 REVERSED AND REMANDED.
 Before MURNAGHAN, WILKINS, and WILLIAMS, Circuit Judges.
 OPINION
 WILKINS, Circuit Judge:
 
 
 1
 Stahle Linn, III was indicted for possession of marijuana with the intent to distribute. See 21 U.S.C.A. Sec. 841(a)(1) (West 1981). After the district court denied his motion to suppress, Linn entered a conditional guilty plea. See Fed.R.Crim.P. 11(a)(2). He now appeals the denial of his motion to suppress, arguing that when law enforcement officers seized him they lacked probable cause to search his airplane, vehicle, or any of his personal belongings. We agree and remand so that the district court may address alternative theories that might render the search reasonable under the Fourth Amendment.
 
 I.
 
 2
 In March 1992, United States Customs agents informed law enforcement officers in North Carolina that Linn was under investigation for possible involvement in the distribution of controlled substances. The agents reported that on several occasions Linn had been observed loading duffle bags and a shovel onto his private airplane in Grain Valley, Missouri and then flying to the Macon County Airport in western North Carolina. The agents related that upon his arrival in North Carolina, Linn would unload these items and place them in an automobile rented at the airport.
 
 
 3
 On March 24, 1992, Customs agents contacted the North Carolina authorities to notify them that Linn had just departed in his airplane from an airport in Missouri and appeared to be traveling toward North Carolina. Based on this information, a team of eleven officers from various law enforcement agencies assembled at the Macon County Airport to await Linn's arrival. The testimony offered by the Government at the suppression hearing showed that the officers planned to follow Linn if he obtained a rental vehicle and immediately left the airport. If after obtaining a rental vehicle Linn returned to his airplane and began unloading items, the officers hoped to develop probable cause to search based on their observations. If probable cause to search did not exist, the officers intended to approach Linn and request that he consent to a search.
 
 
 4
 Linn did not arrive at the airport that day. However, the following day, March 25th, Linn telephoned the airport and stated that he had been delayed by bad weather and would be arriving on March 26th. As the officers awaited Linn's arrival, they discussed their prior knowledge of his alleged drug involvement. They recalled that Linn had been convicted twice for drug offenses approximately fourteen years earlier while he was attending college in North Carolina. The officers also discussed an incident in which a law enforcement helicopter was fired upon while it was conducting an aerial search for marijuana in nearby northern Georgia. Linn was suspected of involvement in the shooting because shortly after the helicopter was fired upon he was seen in the area. Finally, the officers discussed the seizure, on December 13, 1990, of a package of marijuana that had been mailed to an incorrect address in Cashiers, North Carolina. Detective Hall of the Jackson County Sheriff's Department recounted that the package, which was apparently intended for a local drug dealer in Cashiers, was seized after it was delivered to a local merchant. Inside the package, officers discovered approximately three pounds of marijuana and a portion of a newspaper that had been used as packing material. The address label on the newspaper bore Linn's name and the address of a hotel in Kansas City, Missouri. Detective Hall stated that he had telephoned the hotel, but was told that Linn "was no longer around there." Agent Gregory of the North Carolina State Bureau of Investigation responded that Linn had in fact worked at the hotel as an accountant or comptroller. Based on this information, the officers decided to seek a state warrant for Linn's arrest.
 
 
 5
 Detective Hall called Detective Hill of the Jackson County Sheriff's Department and requested that he apply for a warrant. Detective Hill proceeded to the office of a state magistrate where he gave sworn testimony relating the officers' collective knowledge of Linn and his connection with the package of marijuana seized in December 1990. The magistrate concluded that Detective Hill's testimony established probable cause to believe that Linn had possessed marijuana in violation of North Carolina General Statute Sec. 90-95(a)(3) (1993) and thus issued a warrant for Linn's arrest. Detective Hill then proceeded to the airport with the arrest warrant.
 
 
 6
 After Detective Hill joined the other officers, Linn landed at the airport. He parked his airplane on a ramp and proceeded to the airport office to obtain the keys to his rental vehicle. He then drove the automobile to the airplane where he began to transfer his luggage from the airplane to the automobile. Shortly thereafter, the officers conducting surveillance rushed onto the ramp and seized Linn. Although the officers apparently intended to arrest Linn on the state warrant, they did not execute the warrant. Instead, they proceeded to search Linn, discovering $1,543 and a marijuana pipe on his person. A search of Linn's automobile and its contents led to the discovery of 63.8 grams of marijuana and 2.3 grams of cocaine in a camera bag located on the front passenger seat. No further contraband was uncovered during a search of the airplane. Based on the seizure of the contraband from the rental vehicle, Linn was indicted for the instant offense. The state charge relating to the package of marijuana delivered to Cashiers was dismissed.
 
 
 7
 At the suppression hearing, the Government argued that the search of Linn's automobile and airplane was proper as a search incident to arrest. Alternatively, the Government claimed that because probable cause to search the airplane and automobile was present, the search was valid under the automobile exception to the warrant requirement. Linn asserted that the search could not be justified as one incident to arrest because the state arrest warrant was never executed, and further, that the arrest warrant was a mere pretext to search Linn's airplane and automobile. With respect to the automobile exception, Linn maintained that probable cause for the search was not present. The district court concluded that because the search was supported by probable cause it was valid under the automobile exception to the warrant requirement. The court did not address the validity of the arrest warrant.
 
 II.
 
 8
 The Fourth Amendment provides in pertinent part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "This fundamental right is preserved by a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer." California v. Carney, 471 U.S. 386, 390 (1985). Warrantless searches, those "conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment--subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967) (footnote omitted). Due to the exigent circumstances presented by the ready mobility of an automobile and the lesser expectation of privacy that attaches to it, law enforcement officers may conduct a warrantless search of an automobile when they have probable cause to believe that the vehicle contains contraband or evidence of a crime. Carney, 471 U.S at 392. This doctrine, known as the "automobile exception," applies with equal force to the warrantless search of an airplane. E.g., United States v. Nigro, 727 F.2d 100, 106 (6th Cir.1984).
 
 
 9
 Because Linn obtained his rental vehicle only moments before he was seized, the circumstances do not support a finding that the officers had probable cause to search the automobile--except for any containers that were transferred to it from the airplane. California v. Acevedo, 500 U.S. 565, 580 (1991) (stating that probable cause to believe that a container placed in a vehicle contains contraband will justify a warrantless search only for and of that container--not the entire contents of the automobile). Thus, the issue before us is whether the officers had probable cause to search the airplane and its contents; if the officers had probable cause to search the airplane, they clearly had probable cause to search any containers that were removed from the airplane and placed in the automobile and that might conceal contraband. We review de novo the conclusion of the district court that the officers had probable cause to believe Linn was transporting contraband in his airplane when he landed at the Macon County Airport on March 26, 1994. United States v. Rusher, 966 F.2d 868, 873 (4th Cir.), cert. denied, 113 S.Ct. 351 (1992). We review the factual findings underlying this conclusion for clear error. Id.
 
 
 10
 An officer has probable cause to search when the totality of the facts and circumstances known to the officer would "lead a prudent person to believe that the items sought constitute fruits, instrumentalities, or evidence of [a] crime and will be present at the time and place of the search." United States v. Suarez, 906 F.2d 977, 984 (4th Cir.1990), cert. denied, 498 U.S. 1070 (1991). In support of its contention that the officers had probable cause to search Linn's airplane, the Government relies on four items of information known to the officers. First, the officers knew that Linn had been convicted of two controlled substance violations when he was in college. Second, the officers had been told that Linn was suspected of complicity in a shooting at a law enforcement helicopter in northern Georgia. Third, the package of marijuana intercepted in Cashiers, North Carolina contained a newspaper with Linn's name and address on it. And finally, the officers had received a tip from officers in Missouri that Linn was under investigation for distribution of controlled substances and had made a number of flights between Missouri and North Carolina.
 
 
 11
 The first three items of information relied upon by the Government all concern events that occurred at some point in Linn's past. Linn's convictions of the controlled substance offenses occurred approximately 15 years earlier while he was attending college. Agent Gregory testified that he did not know the precise date of the incident in which the helicopter was fired upon, but indicated that he believed it had occurred years ago while Linn was living in Georgia. The most recent of these events--the seizure of the package of marijuana in Cashiers--occurred over a year prior to the search at issue.
 
 
 12
 A history of prior criminal conduct, standing alone, will not give rise to probable cause to believe that an individual is currently in possession of contraband or evidence of crime. To conclude otherwise, would be to hold that anyone with a prior criminal record could be searched at any time. See Beck v. Ohio, 379 U.S. 89, 96-97 (1964). Accordingly, the officer's knowledge of Linn's history of drug involvement was insufficient to establish probable cause for the search.
 
 
 13
 The only information that might have provided probable cause to believe that Linn was currently involved in the transportation of controlled substances was the tip from Customs agents that Linn had made a number of flights between Missouri and North Carolina carrying large duffle bags and a shovel. However, these flights were not inherently suspicious. They involved travel from the area in which Linn was currently residing to an area in which he presently owned property and had attended college. In addition, nothing about Linn's cargo was indicative of illegal activity. It is reasonable to expect that Linn would carry luggage with him on his trips; that he chose to carry duffle bags rather than hard-sided luggage merely suggests a concern about weight or space. Also, Linn's habit of carrying a shovel on his trips is unusual, but does not give rise to suspicions of illegal activity other than perhaps a speculative conclusion that he was using the shovel to till marijuana plants.
 
 
 14
 Finally, even if we were to conclude that Linn's history of involvement with controlled substances and his recent flights between Missouri and North Carolina established probable cause to believe that he was transporting controlled substances between the two states, the Government offered no evidence to prove that the officers had probable cause to believe that on March 26, 1992 Linn was transporting controlled substances when he landed at the Macon County Airport. The facts and circumstances known to the officers prior to March 24, 1992 were more consistent with the possibility that Linn was transporting controlled substances out of, rather than into, North Carolina. And, on March 24th, when the Customs agents reported that Linn had departed Missouri and was believed to be flying toward North Carolina, they did not state whether Linn was carrying any cargo. The officers conducting the surveillance at the Macon County Airport also testified that they were unable to ascertain what Linn was unloading from the airplane before they rushed onto the airport ramp.
 
 
 15
 In sum, Linn's checkered past and recent flights between Missouri and North Carolina gave rise to at most a reasonable suspicion that Linn was involved in the transportation of controlled substances. The officers were not in possession of any information that would have led a reasonable person to believe that Linn was transporting controlled substances on March 26, 1992 when he landed at the Macon County Airport. Thus, at the time the officers rushed onto the airport ramp, they did not have probable cause to search Linn's airplane, vehicle, or his personal belongings.
 
 III.
 
 16
 Because the district court concluded that probable cause was present justifying the search under the "automobile exception," it did not address any alternative theories that might render the search reasonable under the Fourth Amendment. For example, the court did not address whether the seizure of Linn was a valid arrest pursuant to the state warrant, permitting a search of the airplane and automobile incident to his arrest. Such inquiries are necessarily fact intensive and better addressed by the trial court in the first instance. Therefore, we remand to the district court for further proceedings.
 
 
 17
 REVERSED AND REMANDED.