UNITED STATES of America, Plaintiff,

v.

James Thornton EDWARDS,
et al., Defendants.

No. LR–CR–97–67.

United States District Court,
E.D. Arkansas,
Western Division.

Aug. 15, 1997.

William C Adair, Jr., Asst. U.S. Atty., Eastern Dist. of Arkansas, Little Rock, AR, for U.S.

G. Alan Perkins, Hill, Gilstrap, Perkins & Warner, Little Rock, AR, for James Thornton Edwards.

Charles A. Banks, Armstrong, Allen, Prewitt, Gentry, Johnston & Holmes, Little Rock, AR, for Justin Dewey Towner, IV, Herbert McDade Hunt, James Bryan Crenshaw.

James R. Rhodes, III, Dover & Dixon, Little Rock, AR, for Britton Rhodes Metcalf.

## MEMORANDUM AND ORDER

FORSTER, United States Magistrate Judge.

Several defendants in the above-mentioned cases have filed motions to suppress (DE # # 8 and 16). Defendant Britton Rhodes Metcalf has also been included as a movant on oral motion of his attorney, James R. "Catfish" Rhodes, III.

From the testimony received at the hearing held on July 21, 1997, it is found that Messrs. Edwards, Towner, Hunt, Crenshaw and Metcalf were engaged in duck hunting together at Paradise Farms in Arkansas County on November 27, 1996. As the hunters concluded their hunt and were leaving the field, they were intercepted by Special Agents Ron Parker and Kevin Wood of the United States Fish & Wildlife Service. The agents had been surreptitiously observing the hunters, in response to an anonymous call they had received within the week to the effect that Mr. Edwards and others were "overkilling" at Paradise Farms. Although the agents testified that they were there to do a surveillance, they had checked two other "holes" that morning before taking up watch positions at Paradise Farms.

The agents observed the hunters for several minutes before making their presence known. Two hunters (later identified as Messrs. Crenshaw and Hunt) came out of the woods first and headed toward some parked vehicles. Mr. Crenshaw was about fifteen to twenty-five yards ahead of Mr. Hunt and was carrying a shotgun and five mallard drakes. Mr. Hunt had a shotgun and four mallard drakes with him. Two other hunters, Towner and Edwards, were behind the first two at some distance; Mr. Edwards was carrying four ducks, and Mr. Towner was carrying two drake mallards in his left hand, and had a stringer with a "large number" of ducks on it. SA Parker met Mr. Crenshaw and Mr. Hunt at the parked vehicles, where Mr. Crenshaw had walked out into the road, looked both ways, then returned to Mr. Hunt.

Mr. Edwards and Mr. Towner left the path followed by Crenshaw and Hunt and walked back into the woods. SA Wood followed them there, and testified that he saw both men "raking leaves away from a log". His impression was that they were hiding ducks, a hunch that later proved to be true.

Up to this point, there is no indication that the hunters were aware of the presence of the agents. Then at the vehicles, SA Parker identified himself and advised the two hunters (Crenshaw and Hunt) that he wished to see their hunting licenses and duck stamps, and to check their shotguns. Meanwhile, SA Wood had walked up to the two hunters in the woods (Edwards and Towner), identified himself, told them to put down their guns, and asked them about their hunt, including which hunter had killed which duck. The hunters conceded that they had been "party hunting"[1] and couldn't say who killed which birds. Mr. Edwards admitted that they had "a few too many" ducks and suggested that the men go up to the vehicles to count them.

At the vehicles, the two agents asked the four hunters if any more ducks were con-

---

1. "Party hunting" is a practice whereby a group of hunters tallies the maximum legal kill for the group (e.g., six hunters times 5 ducks, excluding species or gender limitation, equals 30 ducks for the hunting party), then seeks to meet that number without regard to the number of birds killed by any single individual. The privilege of taking game birds covered by the MBTA is individual, not collective. See 50 C.F.R. § 20.24 (forbids any person from *taking* more than the daily bag limit). Cf. *United States v. King*, 1992 WL 73358 (E.D.La.) (hunter who killed doves over limit and claimed excess fell under his wife's limit convict-

cealed in the field.[2] All hunters denied the existence of any additional dead birds. The officers then took down license numbers and other pertinent information and photographed the hunters together. SA Parker asked about a video camera he saw atop hunting gear in the back of one of the vehicles, and after being told that it contained film of the hunt, seized the camera and its contents[3]. The four hunters then left in Mr. Hunt's truck.

The two agents returned to the log in the woods where SA Wood had encountered Edwards and Towner, and found concealed beside it 13 freshly killed ducks, placed bill-to-toe along the log and covered with leaves.

Some time beyond the events just mentioned, Mr. Metcalf was seen coming through the woods. He was wearing camouflage and carrying a shotgun, and was wet. He responded to SA Parker that he was not a member of the group that had just left, and denied any involvement with that party. SA Parker asked Mr. Metcalf if they could use his vehicle, and Mr. Metcalf agreed. The men drove first to Mr. Edwards' place, then to a duck picker used by Edwards, and back to Parker's vehicle. That night, SA Parker watched the video seized earlier in the day and Mr. Metcalf's picture was on it. SA Parker called Mr. Metcalf by telephone, and Mr. Metcalf admitted hunting with the others. He also said that he had called Mr. Edwards twice by cell phone right after Mr. Metcalf's encounter with SA Parker.

On May 12, 1997, an information was filed by the United States Attorney charging all five hunters with taking in excess of the daily bag limit of ducks (50 C.F.R. § 20.24), wanton waste of game birds by killing ducks and not keeping them in proper custody (50 C.F.R. § 20.25), and failing to tag protected game birds (50 C.F.R. § 20.36). The information also alleges that all hunters committed the above acts jointly and in violation of 16 U.S.C. §§ 703, 707(a) and 18 U.S.C. § 2.

Defendants have moved to suppress all statements and tangible evidence solicited or collected beyond the agents' initial encounters with the hunters on the grounds that they were not informed of their rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Learned counsel acknowledge that no defendants were placed under arrest, but argue forcefully that the totality of the circumstances created an atmosphere of detention sufficient to require *Miranda* warnings. They point to the inspection of guns, licenses and game, the questions about whether the hunters had anything else to declare, the order (issued by SA Wood to Edwards and Towner) to put down their shotguns, and the grouping and photographing of all hunters before the hunters departed. Lastly they remind the jurist undersigned that *Miranda* warnings were given in the Eastern District of Arkansas' most significant MBTA case in several years, *U.S. v. Lyon*, 949 F.2d 240 (8th Cir.1991).

The United States Attorney has countered that *Miranda* applies only to custodial interrogations, not to encounters with hunters in the field. Case law supports their position. See *United States v. Lyon*, 949 F.2d 240 (8th Cir.1991); *United States v. Sylvester*, 848 F.2d 520 (5th Cir.1988); *United States v. King*, 1992 WL 73358 (E.D.La.1992); *United States v. Seguin*, 779 F.Supp. 54 (W.D.La. 1991).

The focal question is whether or not the hunters could be said to be "in custody". In *United States v. Seguin*, 779 F.Supp. 54 (W.D.La.1991), cited above, the court stated:

"In custody" for *Miranda* purposes is now defined as a "formal arrest or restraint on freedom of movement to the degree associated with formal arrest".

779 F.Supp. at 55.

The total circumstances are to be viewed through the eyes of a reasonable person in the defendant's position.

---

ed as principal of exceeding field possession limit).

**2.** SA Wood testified that the anonymous tipster had offered that the hunters were hiding additional kills.

**3.** SA Parker testified that he had seen one of the hunters carrying the camera out of the woods.

At the suppression hearing, counsel for the defense made much ado of the fact that the agents went to the field for the purpose of acting on the anonymous tip, urging the court to impose a *Miranda* requirement on the agents in such focused circumstances. The United States Attorney sought to repel this onslaught by calling to the witness stand SA Kevin Wood, who came clutching a photocopy of *Stansbury v. California,* 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994), as if it was a tablet delivered unto him by Moses from the mount.[4] *Stansbury* teaches, *inter alia,* that the officer's subjective view that an individual under questioning is a suspect does not bear on whether the individual is in custody for purposes of *Miranda. Stansbury,* 511 U.S. 318 at 324, 114 S.Ct. 1526 at 1530 SA Wood testified that the hunters were at no time under arrest; were not cited with violations at the time; were not restricted in their departure beyond the bounds of normal conversation, and were not subjected to pat-downs, handcuffs, placement in police vehicles, or the like. He acknowledged that it had been his practice in the past to give *Miranda* warnings, but he had discontinued doing so on the strength of advice from AUSA Stoll and the revelations contained in *Stansbury.*

■ This jurist is aware that experienced, skillful officers can become adept at creating an intimidating environment in which they can easily bend citizens to their will. In this instance and on this record, however, and viewing the matter through the eyes of a reasonable hunter standing in the boots of these defendants, it cannot be said for the court that the defendants were detained or in custody. Hence, *Miranda* warnings were not required.

■ Separate mention must be made of the video camera and its contents. As previously mentioned, SA Parker saw one of the hunters carrying the video camera as he was leaving the woods. The camera was then placed in plain view in the open back end of an Isuzu Trooper, on top of hunting equipment. SA Parker asked if the hunt had been filmed with this camera and receiving a reply

in the affirmative, seized the camera and its contents.

At this point, SA Parker had probable cause to conclude that the hunters had been "party hunting" and had killed ducks well beyond their limits. The camera, while not itself an instrumentality of the legal violations, quite likely contained a videotape that immortalized the apparent criminal activity. The vehicle was soon to depart. Under these circumstances, the magistrate judge concludes that the seizure of the camera by SA Parker was lawful and correct, as was his extraction and viewing of the videotape later in the day, without a search warrant. See *California v. Acevedo,* 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) (warrantless seizure and search of closed container in vehicle permissible where probable cause exists).

For the reasons and on the principles aforementioned, the motions to suppress (DE # # 8 and 16) are DENIED.

---

4. Exodus 24:12. The surrogate Moses in this instance was revealed to be Assistant United States Attorney K. Francis Stoll, who did not appear.