Sherry HEARN, Plaintiff-Appellant,

v.

The BOARD OF PUBLIC EDUCATION, Defendant-Appellee.

No. 98-8390.

United States Court of Appeals,

Eleventh Circuit.

Oct. 6, 1999.

Appeal from the United States District Court for the Southern District of Georgia, (No. CV497-088), B. Avant Edenfield, Judge.

Before MARCUS, Circuit Judge, HILL, Senior Circuit Judge, and FERGUSON[*], District Judge.

HILL, Senior Circuit Judge:

Sherry Hearn was terminated from her position as a high school teacher for refusing to take a drug test after marijuana was allegedly found in her car in the school's parking lot. She sued defendants alleging, among other things, denial of her substantive and procedural due process rights, intentional breach of contract, violations of the Fourth and Fifth Amendments. She sought damages as well as reinstatement. The district court granted summary judgment for defendants on all claims and Hearn brought this appeal. For the following reasons, we affirm.

I.

Sherry Hearn was a teacher in Savannah for many years. She was employed under a contract which required that she abide by the policies of the Board of Education of Chatham County (Board).

In 1992, the county enacted its "Safe School Plan" which called for "zero-tolerance" of drugs, alcohol and weapons. In 1993, the Board promulgated a "Drug-Free Workplace Policy" (DFWP) governing its employees. The policy is intended to "deter users and abusers of alcohol, drugs and other controlled substances." It provides for drug testing of any employee when "supervisor observations or other objective

[*]Honorable Wilkie D. Ferguson, Jr., U.S. District Judge for the Southern District of Florida, sitting by designation.

circumstances reasonably support a suspicion that an employee may have violated the Board drug and alcohol policy."[1] The policy further requires that such testing be conducted within two hours of the incident which generates the "reasonable suspicion." An employee's refusal to consent to the drug test, or to a search of her personal property located at the school is cause for termination.[2] Finally, "[a]ny employee who tests positive ... [for] alcohol, drugs or other controlled substances will be terminated."

In April of 1996, campus and Chatham County, Georgia police conducted a "drug lockdown" and random drug search at Hearn's high school in Savannah. Hearn's car was in the school's rear parking lot, unlocked and with its passenger side window down.

The Chatham County deputy's drug-sniffing dog alerted at Hearn's vehicle. The deputy let the dog enter the car through the passenger window. The dog alerted on the vehicle's closed ashtray. A campus officer opened it and found a partially burned, hand-rolled cigarette. He testified that he field-tested it for marijuana, and it tested positive.[3] The officers noticed the faculty parking permit on the dash and took it with them.

The officers went to the school's principal, Linda Herman, and informed her of these events. She summoned Hearn, who denied knowledge or possession of any marijuana. One of the County's officers "Mirandized" Hearn, telling her that she probably would be charged with criminal possession of marijuana.

Herman informed Hearn that, under the DFWP, she must take a urinalysis drug test within two hours. Hearn refused. Herman gave Hearn a warning letter which directed her to take the drug test. The letter stated:

---

[1]This policy lists a variety of circumstances which cause reasonable suspicion to arise. Although the circumstances of this case are not specified, the list is not exhaustive.

[2]The policy provides that "[t]he School System will discipline employees in its sole discretion, up to and including immediate discharge ... for any violation of this policy, including ... (2) refusing to submit to testing; (3) refusing to execute a release/consent form; (4) failing to cooperate with an investigation or search."

[3]The positive finding was later confirmed by the Crime Lab.

2

[I]n the course of a drug search, a substance [found to have tested positive for cannabinoid] was found in your personal vehicle.... Based on this finding, in compliance with BOE Policy 766—Drug Free Workplace, you are hereby directed to submit to a drug test for reasonable suspicion within [the two-hour limit]. Your failure to comply may result in disciplinary action.

Hearn, however, continued to refuse to take the drug test. Later, the Superintendent of Schools for Chatham County suspended her.[4] He recommended that she be terminated for "insubordination" and "other good and sufficient cause" as the result of her failure to consent to take the drug test within the prescribed two hour period.

The Board provided Hearn with a hearing. She appeared with counsel and testified. At the end of the hearing, the Board made no findings of fact, but voted to accept the superintendent's recommendation and terminated Hearn. Hearn appealed to the State Board of Education, which issued a written opinion upholding the Board.

## II.

Hearn's termination was for insubordination—her refusal to take the drug test within the prescribed two hour period. She argues that she cannot be terminated for her refusal because she was under no obligation to take the drug test. She was not obliged to take the test because there was no "reasonable suspicion" as required by the Board's policy prior to directing an employee to take the test. There was no reasonable suspicion because the search of her car was illegal under both the Board's own policy which requires an employee's consent or a search warrant in order to search an employee's personal property at school, and under the Fourth Amendment. We find no merit in either of these contentions.[5]

First, the Board's policy regarding searches of employee property is legally irrelevant to the search of Hearn's car. The Board's policy applies only to *intra*-school events, i.e., those involving only school

---

[4]Hearn did take the drug test the following day on her attorney's advice. The result at that time was negative.

[5]To the extent that these contentions also raise property-interest based procedural and substantive due process claims, they are barred by *McKinney v. Pate,* 20 F.3d 1550 (11th Cir.1994) (failure to show absence of an adequate state remedy is an absolute bar to federal relief).

officials and school employees. It provides what will happen when reasonable suspicion arises in an exclusively intra-school setting, as when school officials discover circumstances generating reasonable suspicion that an employee is using drugs.

That was not the case here. Reasonable suspicion arose in the context of a drug sweep of a parking lot by local law enforcement officers whose dog alerted at Hearn's car—a *law enforcement* event. Neither the Board's policy nor Hearn's contract of employment trumps the legal authority of law enforcement officers to perform such a sweep or the subsequent search. The officers' authority is limited only by the Constitution.

Hearn implicitly recognizes this distinction. She makes much of the fact that both the Superintendent and Herman testified that the "reasonable suspicion" which required Hearn's consent to a drug test was based on the campus police officer's finding of marijuana in her car, an *intra*-school event, not on the dog sniff and alert, a county law enforcement event. Her argument is that since a campus police officer actually found the marijuana, the Board's policy governed his search and it should not have been conducted without her consent. Because the search was without her consent, no reasonable suspicion could arise from it and she was not required to consent to the drug test.

We find no basis in the law or in the real world to distinguish two legally distinct events in the one sweep and search. Merely because a campus police officer was present during the sweep and happened to be the one to find the marijuana does not change the fact that this was a law enforcement event, not bound by any school policy or employment contract. Even if, as Hearn argues, the Board's policy gave employee's a heightened expectation of privacy with regard to their personal property at school, that expectation does not bind local law enforcement. They are not parties to the contract. Whatever expectation of privacy Hearn had in her vehicle during a law enforcement event must be located in constitutional law, not local school board policies.

Second, the Constitution does not provide Hearn with any expectation of privacy in the odors emanating from her car. A dog sniff of a person's property located in a public place is not a search within the

4

meaning of the Fourth Amendment. *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (sniff of a person's luggage is only minimally intrusive and is not a Fourth Amendment search); *Merrett v. Moore,* 58 F.3d 1547, 1553 n. 11 (11th Cir.1995) ("The use of dogs on the exterior of the cars constitutes no search"); *United States v. Seals,* 987 F.2d 1102, 1106 (5th Cir.1993) (sniff of vehicles exterior no search); *United States v. Morales-Zamora,* 914 F.2d 200, 205 (10th Cir.1990) (same); *United States v. Rodriguez-Morales,* 929 F.2d 780, 788 (1st Cir.1991)(same).

Furthermore, the alerting of a drug-sniffing dog to a person's property supplies not only reasonable suspicion, but probable cause to search that property. *United States v. Banks,* 3 F.3d 399, 402 (11th Cir.1993) ("[P]robable cause arises when a drug-trained canine alerts to drugs"); *United States v. Scarborough,* 128 F.3d 1373, 1378 (10th Cir.1997) ("It is undisputed that a drug sniffing dog's detection of contraband in itself establishes probable cause for a search warrant").

When the property alerted to is in a vehicle, the Constitution permits a search of the vehicle immediately, without resort to a warrant. *California v. Acevedo,* 500 U.S. 565, 581, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) (upholding warrantless search of a paper bag in an automobile which the police had probable cause to believe contained contraband); *United States v. Forker,* 928 F.2d 365 (11th Cir.1991); *See also Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

The search of Hearn's car, therefore, did not violate the Fourth Amendment. It was based upon the probable cause generated by the dog sniff, and justified by the automobile exception to the general requirement for a warrant.

Thus, there was a reasonable suspicion generated by these circumstances regarding Hearn's possible drug use. At this point, the Board's policy was triggered.[6] Hearn's refusal to give her consent to Board's request for a drug test gave rise to the possibility of her termination under that policy. Her subsequent termination, therefore, did not violate either her contract of employment nor the Board's policy, and she is

---

[6]Although the police officer told Hearn that she might be criminally charged, the *intra-school* employment investigation was governed by the Board's policy.

5

not due to be reinstated for these reasons.

Hearn's next argument is that she was wrongfully terminated for exercising her rights under the Fifth Amendment when she relied upon the exercise of her constitutional right to remain silent. She contends that because the officer *Mirandized* her, she cannot be terminated for exercising her right to remain silent. This argument is without merit. The production of body fluids is non-testimonial. *See Schmerber v. California,* 384 U.S. 757, 761, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Hearn has not offered any authority that the production of urine does not fall within this rule, nor do we know of any. *See National Treasury Employees Union v. Von Raab,* 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989) (production of urine may be compelled). Hearn was not forced to testify against herself in violation of the Fifth Amendment.[7]

### III.

Hearn's contract with the Board does not vitiate the authority of the law enforcement officers to search her car under the circumstances of this case. Nor were any of Hearn's constitutional rights violated. Accordingly, the judgment of the district court is AFFIRMED.

FERGUSON, District Judge, dissenting:

I respectfully dissent.

It is important to note at the outset that this highly publicized case does not arise from a criminal proceeding. For that reason, in my opinion, the majority's scholarly discussion of probable cause is not dispositive on the questions presented. Central to one of the causes of action is whether reasonable suspicion as a basis for the termination of a teacher's employment was obtained in violation of an employment agreement.

There was no police detention or arrest; no law enforcement report of a crime; no probable cause affidavit filed; and no magistrate determination of probable cause. What is shown by undisputed facts is that a school security officer, assisted by a city police canine officer who had been invited to assist the school in

---

[7]We do not reach the issue of whether the Eleventh Amendment bars Hearn from recovering damages because we find against her on her claims.

enforcement of its anti-drug policy, conducted a sweep search within the walls of a high school campus. During a walk through the student parking lot the dog alerted to the presence of a controlled substance outside the plaintiff's vehicle. On instructions of the school officer the canine officer directed his dog into the plaintiff's automobile through an open window where it allegedly alerted again to the still warm remains of a cigarette which was believed to be an illegal substance. Without securing a warrant, or the teacher's consent, the school officer entered the plaintiff's vehicle and retrieved the cigarette remnant. Purportedly the cigarette remnant field tested positive for marijuana. All of these events occurred before noon in the student lot where the vehicle was parked, unlocked and with the windows down. The substance was turned over to police and consumed during a police laboratory analysis. It was argued by counsel for Mrs. Hearns, and not disputed, that she was with her class at all times during the morning hours.

We may only speculate as to why no criminal action was taken. Perhaps law enforcement officials decided that (1) a warrant to impound and search the parked and unattended vehicle should have been obtained, (2) the lock down and sweep search for drugs within the confines of the school campus, was a school board matter and not a law enforcement event, (3) a linkage between the contraband and the vehicle owner, under the circumstances, was too tenuous to support a good faith prosecution, or (4) destruction of the infinitesimal amount of contraband during the analysis, without prior notice to potential defendants, jeopardized a prosecution. Notwithstanding the reason it is clear that after the substance was seized by the school board, law enforcement officials totally distanced themselves from any further involvement in the case.

This is a simple civil case based on administrative action where the plaintiff alleges among other things, that the defendant, her employer, breached an employment agreement which had been hammered out to control the conduct of the parties in exactly the situation presented here. The contract provides that faculty and administrators are insulated from searches of their desks, personal items or vehicles by school personnel except with the prior consent of the employee, which consent shall not be withheld where there is reasonable suspicion to believe that the employee has violated a policy, regulation or criminal law. It is not disputed that

7

the employment contract has no application in criminal proceedings which may result in a termination of employment in the event of a conviction. In pertinent parts the Board's "Drug-Free Workplace Policies and Procedures" provide:

XI.   *All Current Employees*

    A.   Reasonable Suspicion (For Cause)

    1. *Circumstances Giving Rise to Suspicion*

    The School System requires all current employees to submit to alcohol and drug tests whenever supervisor observations or other objective circumstances reasonably support a suspicion that an employee may have alcohol and/or drugs present in his or her system or has otherwise violated the Board drugs and alcohol policy....

XVII.   *Investigations and Searches*

    All search requests must be approved by the Executive Director of Human Resources or designee.

    Where a supervisor has reasonable suspicion that an employee has violated this policy, the Administration may search and inspect.... *The Administration will search an employee's personal vehicles ... only with the employee's consent.* However, any employee refusing to cooperate will be subject to being reported to law enforcement officials, detention of his/her property and/or person pending the issuance of a search warrant upon probable cause, as well as discipline, up to and including discharge.

School officials concede that the basis for their employment action was the seizure of the suspect cigarette fragments from the interior of the plaintiff's vehicle. Prior to the nonconsensual entry into the automobile, they admit, there was insufficient grounds to require submission to a drug test. Linda Herman, the plaintiff's principal, testified at the administrative hearing that:

A. I think ... it is fair ... to ask somebody ... [to take a drug test]

[I]f we find drugs in their cars ...

Q. And the reason you thought that was reasonable was that, however it got there, something had been found in her car.

A. Right.

A. [I]t's fair to ask someone to have a drug test if you find something in their car ...

8

Q. Was the only reason that you think it might have been a reasonable suspicion, that something was found in her car?

A. That's correct.

Board Superintendent Patrick Russo also testified that the reasonable suspicion relied on, as a basis for requiring the drug test, derived from the discovery of marijuana in the plaintiff's automobile. He admitted that the Board had violated its own policy but defended the action on grounds that "the integrity of the policy, from my perspective, outweighed the violation of the procedure...." In other words, he is saying, the teacher's contractual right to privacy in her personal belongings is unenforceable because the Board's search, even though in violation of the contract, gave rise to suspicion that she violated its anti-drug policy.

Abandoning its earlier position, the Board does not argue here that the contract permits it to search without consent where the Administration has a suspicion that an employee has violated its drug policy. Indeed it is clear in the procedures that a non-consensual search of an employee's personal vehicle by Administration, even with reasonable suspicion, is prohibited. The new theories advanced by the Board, in defense to this federal lawsuit, are that the finding of reasonable suspicion is untainted because the dog's alert outside the vehicle, without the search, was sufficient to justify the administrative action, or no warrant was needed for an intrusive search because a local law enforcement officer was present. Neither theory was advanced by the Board during administrative proceedings and cannot be reconciled with the facts. Mrs. Hearn's injury resulted from an administrative action, which was governed by Board policy, unrelated to anything that could have been done in a criminal action. The local police officer did no more than bring a drug detection dog to the campus. He was then directed by the school board officer.

I would note further that the parties do not disagree that as a basic principle of any agreement a breach by one party relieves the other party of its obligation to perform. *Bradley v. Health Coalition, Inc.,* 687 So.2d 329, 333 (Fla. 3d DCA 1997). That principle should control the outcome.

Mrs. Hearns, a teacher of constitutional law, knew of her rights under the agreement, and was understandably aggrieved by the unlawful conduct of her employer. She acted properly and reasonably in

9

refusing to consent to a urinalysis until she could reach her attorney.[1]  Even though it breached its obligation

under the agreement the employer was not without a remedy.  Having forfeited its administrative remedy by

the wrongful search, it could have pursued a criminal investigation.

Legally, the plaintiff's position is unassailable.  But there are relevant factors beyond principles of

contract law which have chilling ramifications.  The plaintiff had been very critical of the School Board's

policy of campus lock down searches for drugs which she likened to police state tactics.  Because of her

classroom criticism of the practice as unconstitutional, she was not in favor with the employer.  Expectations

of privacy guaranteed by the policy were ignored and the penalty imposed was the professional equivalent

of the death penalty.  The twenty-seven (27) year stellar career of a 1994 "Teacher of the Year" is shattered

with only three (3) years remaining to retirement with benefits.

By the holding here the majority has recognized, implicitly, an illegal drugs exception to the law that

the court will not rewrite private contracts between parties who are on equal footing.  *Complete Interiors, Inc.

v. Behan,* 558 So.2d 48, 52 (Fla. 5th DCA 1990).  It is widely recognized that in the nation's zealous war on

drugs, rights secured by the Fourth Amendment have shrunk.  *See* Robert W. Sweet, U.S. District Judge, *The

War on Drugs is Lost,* National Review, Feb. 1996, at 44 ("The rights of the individual have been curtailed

in the name of the War on Drugs.").  This may be the first case to hold that courts will not enforce private

contract rights between an employer and employee, hammered out after negotiations to govern conduct of

---

[1]After reaching her attorney several hours later Mrs. Hearns submitted to a urinalysis for controlled substances which was performed by a reputable laboratory.  The results were negative.  It is generally accepted scientific knowledge that active ingredients in marijuana, tetrahydrocannabinols (THC), are not flushed from the body in hours.  THC is stored in fatty tissue and can be detected by conventional laboratory testing for up to 30 days after ingestion for a casual user and can be found in the body of chronic users up to a year after last consumed.  Testimony of Dr. Donald Roach, Analytical Biochemist, in *United States v. Roach,* No. 99 Cr. 6005 (S.D.Fla. Sept. 3, 1999).

No argument can be made that the delay in submitting to the test was intended to conceal the use of drugs or that the school board was hindered in its investigation.  Clearly this case is not about drug possession or use by a high school teacher.  Mrs. Hearns was fired because she challenged an unlawful school board action and delayed submission to a drug test while seeking the advice of counsel.

10

the parties in areas of privacy, where the employer has a suspicion, no matter how insubstantial, that the employee violated a drug policy. Not only is an outstanding high school teacher a casualty in this episode; so, incidentally, are basic contract principles.

Unquestionably the plaintiff's termination from employment as a teacher for not submitting to a drug test was an "intra school event". On the collateral point, whether the search for and seizure of contraband from the interior of the plaintiff's vehicle by a school board officer was a "law enforcement event", presents at least an issue of fact.

In my view this fact-driven case should go to a jury.