Justice Scalia,
dissenting.
I join the dissent of The Chief Justice, but add these few words in response to Justice Stevens’ concurrence.
*143 It is not as clear to me as it is to Justice Stevens that, at the time the Fourth Amendment was adopted, a police officer could enter a married woman’s home over her objection, and could not enter with only her consent. Nor is it clear to me that the answers to these questions depended solely on who owned the house. It is entirely clear, however, that if the matter did depend solely on property rights, a latter-day alteration of property rights would also produce a latter-day alteration of the Fourth Amendment outcome— without altering the Fourth Amendment itself.
Justice Stevens’ attempted critique of originalism confuses the original import of the Fourth Amendment with the background sources of law to which the Amendment, on its original meaning, referred. From the date of its ratification until well into the 20th century, violation of the Amendment was tied to common-law trespass. See Kyllo v. United States, 533 U. S. 27, 31-32 (2001); see also California v. Acevedo, 500 U. S. 565, 581, 583 (1991) (SCALIA, J., concurring in judgment). On the basis of that connection, someone who had power to license the search of a house by a private party could authorize a police search. See 1 Restatement of Torts § 167, and Comment b (1934); see also Williams v. Howard, 110 S. C. 82, 96 S. E. 251 (1918); Fennemore v. Armstrong, 29 Del. 35, 96 A. 204 (Super. Ct. 1915). The issue of who could give such consent generally depended, in turn, on “historical and legal refinements” of property law. United States v. Matlock, 415 U. S. 164, 171, n. 7 (1974). As property law developed, individuals who previously could not authorize a search might become able to do so, and those who once could grant such consent might no longer have that power. But changes in the law of property to which the Fourth Amendment referred would not alter the Amendment’s meaning: that anyone capable of authorizing a search by a private party could consent to a warrantless search by the police.
*144 There is nothing new or surprising in the proposition that our unchanging Constitution refers to other bodies of law that might themselves change. The Fifth Amendment provides, for instance, that “private property” shall not “be taken for public use, without just compensation”; but it does not purport to define property rights. We have consistently held that “the existence of a property interest is determined by reference to ‘existing rules or understandings that stem from an independent source such as state law.’” Phillips v. Washington Legal Foundation, 524 U. S. 156, 164 (1998) (quoting Board of Regents of State Colleges v. Roth, 408 U. S. 564, 577 (1972)). The same is true of the Fourteenth Amendment Due Process Clause’s protection of “property.” See Castle Rock v. Gonzales, 545 U. S. 748, 756 (2005). This reference to changeable law presents no problem for the originalist. No one supposes that the meaning of the Constitution changes as States expand and contract property rights. If it is indeed true, therefore, that a wife in 1791 could not authorize the search of her husband’s house, the fact that current property law provides otherwise is no more troublesome for the originalist than the well-established fact that a State must compensate its takings of even those property rights that did not exist at the time of the founding.
In any event, Justice Stevens’ panegyric to the equal rights of women under modern property law does not support his conclusion that “[ajssuming . . . both spouses are competent, neither one is a master possessing the power to override the other’s constitutional right to deny entry to their castle.” Ante, at 125. The issue at hand is what to do when there is a conflict between two equals. Now that women have authority to consent, as Justice Stevens claims men alone once did, it does not follow that the spouse who refuses consent should be the winner of the contest. Justice Stevens could just as well have followed the same historical developments to the opposite conclusion: Now that *145 “the male and the female are equal partners,” ibid., and women can consent to a search of their property, men can no longer obstruct their wishes. Men and women are no more “equal” in the majority’s regime, where both sexes can veto each other’s consent, than on the dissent’s view, where both sexes cannot.
Finally, I must express grave doubt that today’s decision deserves Justice Stevens’ celebration as part of the forward march of women’s equality. Given the usual patterns of domestic violence, how often can police be expected to encounter the situation in which a man urges them to enter the home while a woman simultaneously demands that they stay out? The most common practical effect of today’s decision, insofar as the contest between the sexes is concerned, is to give men the power to stop women from allowing police into their homes — which is, curiously enough, precisely the power that Justice Stevens disapprovingly presumes men had in 1791.