SILVER, J.,
concurring.
[¶ 21] I concur in the Court’s opinion, but write separately to emphasize the dangers of multi-agency search and interdiction projects like this one. Here, the facts as found by the motion court support denial of Ntim’s motion to suppress. Nevertheless, the use of drug-sniffing dogs to conduct ostensibly routine administrative safety inspections of commercial passenger buses is a practice that should be seriously questioned.
[¶ 22] The ■ record reveals that the State Police Commercial Vehicle Unit routinely uses a drug-sniffing dog as part of its safety inspections. The propriety of this practice is questionable at best. Although dog sniffs are not searches per se,[7] the element of deception inherent in *378 this practice is cause for concern. As Lieutenant Currie testified, passengers are instructed to leave their luggage behind when they exit the bus for the safety inspection. This is very likely an illegal seizure of passengers’ property. This is not a situation where passengers are free to withhold consent to subject their personal property to an encounter with law enforcement.[8] Passengers are essentially tricked into leaving the bus. They believe they are leaving for a routine safety inspection, most likely without the expectation that a police dog will be given unlimited access to their personal effects. Although there is no expectation of privacy in the odor of illegal drugs emanating from one’s person or belongings, see Illinois v. Caballes, 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005); United States v. Place, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), the inability of passengers to control or participate in the police encounter — or to even know that it is taking place — is troublesome. As a result, this scenario does not fit comfortably within existing Fourth Amendment jurisprudence relating to bus searches. See generally Florida v. Bostick, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (holding that the practice of seeking bus passengers’ consent to search is not inherently coercive); United States v. Drayton, 536 U.S. 194, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002) (holding that the Fourth Amendment does not require officers who request bus passengers’ consent to inform passengers of their right to withhold consent).
[¶ 23] As the Court acknowledges in footnote 3 of its opinion, Lieutenant Currie committed a Fourth Amendment violation when he searched Ntim’s bag. The dog’s alert may have generated probable cause to believe that the bag contained contraband, but Currie was not justified in immediately opening it. The State hinted in its brief that exigent circumstances may have permitted Currie’s warrantless search of the bag, but did not fully develop this argument. It is difficult to see what exigent circumstances would have prevented Currie from temporarily detaining the bag in order to seek either consent or a search warrant. See Place, 462 U.S. at 702, 103 S.Ct. 2637; United States v. Jacobsen, 466 U.S. 109, 121-122, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). The State did not argue that the “automobile exception” to the Fourth Amendment’s general warrant requirement applies in this case. See, e.g., California v. Acevedo, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). That argument would likely have been unsuccessful as well. Automobiles present a unique situation because of their inherent mobility. Here, there is no indication that Ntim, as a passenger, could have easily made off with the bus and the potential evidence it contained, especially in light of the fact that he was inside the terminal when the dog alerted and police took control of the bag.
[¶ 24] The State only prevails in this case because, based on the lower court’s findings, we cannot infer a causal link between this serious violation and Ntim’s consent to the search of his person, which *379 ultimately revealed the drugs he later sought to suppress. Agent Wolfe testified that he confronted Ntim and “outlined some of the evidence that indicated that there was a likelihood that he might be carrying illegal drugs.” Presumably, this would include the fact that the dog had alerted on his luggage, and that they had already found traces of a leafy green substance — presumably marijuana — inside his bag. If this were indeed the case, Ntim’s consent to the search is almost certainly tainted by this exploitation of the illegal search. However, our review must be limited to the facts as found by the motion court. The factual basis to draw such a conclusion is simply lacking from the motion court’s findings.
[¶ 25] Ironically, the various law enforcement agencies involved in this case could have skipped the safety routine, which appears to have been nothing more than a pretext for conducting drug interdiction, given the presence of both state and federal drug enforcement agents. If they had simply brought the drug-sniffing dog into the terminal, this would not even be a close case. See, e.g., Caballes, 543 U.S. at 409, 125 S.Ct. 834 (concluding that the use of a trained drug-sniffing dog does not implicate legitimate privacy interests); Place, 462 U.S. at 707, 103 S.Ct. 2637 (holding that a dog sniff of luggage left in a public place is not a search within the meaning of the Fourth Amendment). Law enforcement officers are free to approach citizens to seek consensual interactions. Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). None of the actions law enforcement took inside the terminal amounted to constitutional violations. The fact that law enforcement agents could have achieved the same result without threatening passengers’ Fourth Amendment rights counsels in favor of a reassessment of the efficacy and utility of this practice.
[¶ 26] However inadvisable this tactic may be, here the motion court did not find a connection between the illegal search that took place on the bus and Ntim’s voluntary consent to a search in the terminal restroom. For that reason alone, I agree that the court did not err in denying Ntim’s motion to suppress.

. Exposing luggage found in a public place to a trained drug-sniffing dog does not constitute a search for purposes of the Fourth Amendment. United States v. Place, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). However, when police officers bring a dog onto the front porch of a home, the physical intrusion into the constitutionally protected curtilage is enough to establish that a search occurred. Florida v. Jardines, - U.S. -, *378 133 S.Ct. 1409, 1417-18, 185 L.Ed.2d 495 (2013).

. In the context of drag interdiction efforts conducted on buses, the U.S. Supreme Court has explained that, in determining whether police conduct is sufficiently coercive that an attempt to seek a consensual encounter rises to the level of a seizure within the meaning of the Fourth Amendment, the proper inquiry is "whether a reasonable person would feel free to decline the officers’ requests or otherwise terminate the encounter.” Florida v. Bostick, 501 U.S. 429, 436, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).