**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-4758**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

SIDNEY STEVONS MITCHELL, a/k/a Sidney Stephon Mitchell,

Defendant – Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Thomas D. Schroeder, District Judge.  (1:13-cr-00024-TDS-1)

Submitted:  July 7, 2014          Decided:  September 24, 2014

Before KEENAN, DIAZ, and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Louis C. Allen, Federal Public Defender, John A. Duberstein, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greensboro, North Carolina, for Appellant.  Ripley Rand, United States Attorney, Kyle D. Pousson, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Sidney Mitchell pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court sentenced him to 26 months' imprisonment.

Mitchell contends that the district court erred in denying his motion to suppress a firearm that a police officer found in the car that Mitchell was driving.[1] The district court concluded that the officer had reasonable suspicion to make a traffic stop and probable cause to search the car. We affirm.

I.

"We review legal conclusions made pursuant to a district court's suppression determination de novo, but review the underlying factual findings for clear error." United States v. Seidman, 156 F.3d 542, 547 (4th Cir. 1998). We recite the relevant evidence in the light most favorable to the government. Id.

A.

At approximately 5:00 p.m. on November 20, 2012, Officer Douglas Welch of the Durham, North Carolina Police Department observed a car turn north onto South Roxboro Road. Welch's

---

[1] Mitchell entered a conditional plea of guilty, thus preserving his right to appeal the district court's ruling.

attention was drawn to "[t]he darkness of the [car's] window tint," which he suspected violated North Carolina law. J.A. 29. He followed it to view the windows from several different angles and compare them to those of other nearby cars.[2] Welch had done this "hundreds" of times during his ten years as a police officer. J.A. 30.

After following the car for about a mile, Welch stopped it. As he sat in his patrol car, Welch saw the "silhouette of the driver bent over as if to place something on the floor or in that direction or pick something up from that direction." J.A. 34. Welch then approached the car, and saw Mitchell in the driver's seat, an adult in the passenger seat, and two children in the backseat. When Welch asked Mitchell for identification, Mitchell avoided eye contact and appeared nervous.

Welch ran Mitchell's name through a police database and learned that Mitchell had prior drug and firearm arrests. Mitchell also had alerts for being armed and dangerous, fleeing, being a validated gang member, and being a STARS[3] offender. Welch called for assistance, and Officer Watt responded.

---

[2] According to Welch, "[i]t was fairly light out [and he] had no trouble seeing." J.A. 28.

[3] The parties' briefs explain that STARS is an offender notification program, which informs prior felons of the consequences of continued violations of the law, including possession of a firearm.

3

Before Watt arrived, Welch again approached the car to test the window tint. To perform the test, Welch placed part of the testing device on the interior of the driver's side window. As he performed the test, Welch noticed that Mitchell was sweating. Welch also smelled the odor of burnt marijuana coming from where Mitchell was seated.[4]

Welch asked Mitchell if he had been smoking marijuana. Mitchell denied it. Welch then directed Mitchell to get out of the car. At that point, Welch asked Mitchell for consent to search him. Mitchell raised his hands, said he knew "the routine," and Welch frisked him. J.A. 59. A subsequent search of the car uncovered a small "residue" amount of marijuana on the driver's side floorboard, which was too little to collect or photograph, and a firearm underneath the driver's seat. J.A. 46-47.

B.

Mitchell moved to suppress the firearm found in the car. After a hearing, at which Officer Welch testified, the district court denied the motion. The court determined that Welch had reasonable suspicion to believe that the car's window tint violated North Carolina law. The court found Welch to be

---

[4] The test revealed that the window tint did not violate North Carolina law.

credible and reasoned that Welch's belief as to the window tint violation was based on his extensive prior experience in such matters, as well as Welch's comparison of the windows with those of nearby cars. The court also concluded that the odor of burnt marijuana emanating from the car gave Welch probable cause to search it.

On appeal, Mitchell does not contest the validity of the traffic stop. Instead, he focuses on the lawfulness of the subsequent search of the car, to which we now turn.

II.

Before an officer may search a car, he must first have probable cause. California v. Acevedo, 500 U.S. 565, 580 (1991). Probable cause exists when, based on the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). We have held that an odor of marijuana emanating from inside a car is sufficient to establish probable cause. United States v. Scheetz, 293 F.3d 175, 184 (4th Cir. 2002).

Mitchell contends that Welch's testimony "was contradictory or insufficient to form a basis for probable cause and justify the warrantless search." Appellant's Br. at 15. According to Mitchell, the district court should not have credited Welch's

5

testimony about this particular traffic stop because "an officer conducting so many stops [for window tint violations] is unlikely to remember all the significant details from each of them." Id. at 16. He also argues that the district court should have viewed Welch's testimony regarding what he saw inside the car "with great skepticism." Id. at 19. Specifically, Mitchell says that Welch could not have seen Mitchell's movements in the car because he was "looking through heavily tinted auto glass after sunset"[5] and not during "a clear day with sufficient light." Id. Finally, Mitchell contends that Welch's testimony about smelling burnt marijuana is not believable because Welch failed to notice the odor of marijuana when he first approached the car.

At bottom, Mitchell's arguments challenge Welch's credibility. But "this court is generally reluctant to overturn factual findings of the trial court, [and] this is doubly so where the question goes to the demeanor and credibility of witnesses at trial, since the district court is so much better situated to evaluate these matters." United States v. D'Anjou, 16 F.3d 604, 614 (4th Cir. 1994). We find no cause to overturn the district court's factual findings in this case.

---

[5] Mitchell points out that sunset in Durham, North Carolina on November 22, 2012 occurred at 5:05 p.m., at or near the time of the traffic stop.

To begin with, Mitchell fails to provide support for his argument that Welch's substantial experience with window tint violations prevented him from remembering the details of this particular traffic stop. As a result, the district court was free to credit Welch's testimony.

Mitchell's attack on Welch's ability to observe the events he described at the hearing also fails. The district court heard and apparently credited Welch's testimony that he saw the driver bending over "as if to place something on the floor." J.A. 34. And while we appreciate Mitchell's contention that Welch's testimony is suspect given that the events in question occurred at or near sunset, he never made this argument before the district court. We are generally loath to allow a party to supplement the record with facts not presented to the district court. See Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989). But even if we were to accept Mitchell's proffer as fact, it does not necessarily discredit Welch. As a matter of common understanding, daytime does not "begin at sunrise or end at sunset, but includes dawn at the one end and twilight at the other." United States v. Gosser, 339 F.2d 102, 111 (6th Cir. 1964) (internal quotation marks omitted). Thus, it is entirely feasible that there was sufficient light at sunset for Welch to see what he described.

7

Mitchell next emphasizes that Welch smelled the odor of burnt marijuana only when he returned to test the car's window tint. According to Mitchell, such an odor would have been strongest when Welch first approached the car. He also contends that the district court should have rejected Welch's version of the events given that the police failed to recover any marijuana in the car.

As it was free to do, however, the district court credited Welch's testimony that he first smelled the odor of marijuana when he placed a part of the window tint testing device inside the car.[6] Once the court found Welch believable on that score, it then correctly concluded that this fact alone gave Welch probable cause to search the car. See Scheetz, 293 F.3d at 184.

### III.

For the forgoing reasons, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

AFFIRMED

---

[6] The district court also credited Welch's testimony that he saw residue of marijuana in the car, but that it was too small to collect.

8