PAGE, Justice, and STRAS, Justice
(dissenting jointly).
We respectfully dissent. The court apparently wishes that we lived in a world without Missouri v. McNeely, — U.S. -, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013), and one in which there are no limits to the search-incident-to-arrest doctrine. But we do not live in such a world. The Supreme Court of the United States has decided McNeely and, over the past several decades, has limited searches incident to arrest. Even though the court’s opinion strikes a confident tone, the truth of the matter is that its decision is borne of obsti-nance, not law. The court today fundamentally departs from longstanding Fourth Amendment principles, and nullifies the warrant requirement in nearly every drunk-driving ease.
I.
As justices of a state supreme court, we are bound to follow decisions of the Supreme Court of the United States on questions of federal law. U.S. Const. Art. VI. Rather than carrying out its duty, the court selectively quotes from some Supreme Court decisions and ignores others to reach a decision that is at odds with Supreme Court precedent on the scope of searches incident to arrest. Two erroneous assumptions permeate the court’s analysis. First, the court assumes, without support, that biological material may be taken from inside a person’s body as part of a search incident to arrest. Second, the court assumes, again without support, that the rationales underlying the search-incident-to-arrest exception — officer safety and preventing the destruction of evidence, see Chimel v. California, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) — do not apply to searches of a person. In the end, the court ultimately arrives at a decision that is as notable for its disregard of Supreme Court precedent as it is for its defective logic.
A.
To start with the court’s first assumption, the Supreme Court has never implied, much less stated, that the search-incident-to-arrest exception extends to the forcible removal of substances from within a person’s body.
The court relies almost exclusively on United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), a search-incident-to-arrest case that is not as expansive as the court claims. In approving the warrantless breath test that Bernard refused in this case, the court seizes upon Robinson’s statement that, “in the case of a lawful custodial arrestf,] a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a ‘reasonable’ search under that Amendment.” Id. at 235, 94 S.Ct. 467. The court then insists, contrary to authority, that the Supreme Court has not subsequently “nar *775 rowed the [search-incident-to-arrest] exception with respect to a search of the arrestee’s body.” The court starts from the premise that the Supreme Court intended a “full search of the person” to be so broadly defined as to include the compelled removal of biological material from inside the body, and then effectively ignores everything the Supreme Court has said since Robinson about searches incident to arrest.
Although Robinson’s language is broad, it is not unlimited, and it does not support the invasive search at issue in this case. In Robinson, the police arrested the defendant for driving after his license had been revoked. 414 U.S. at 220-21, 94 S.Ct. 467. In accordance with standard procedures, an officer searched Robinson and found a cigarette package that contained heroin in Robinson’s coat pocket. Id. at 221-23, 94 S.Ct. 467. At Robinson’s trial, the trial court admitted the heroin into evidence, and Robinson was convicted, largely because of the heroin found during the search incident to his arrest. Id. at 223, 94 S.Ct. 467. The Supreme Court held that a search of a person incident to arrest is not limited to a protective frisk for weapons, as in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and may extend to the preservation of evidence of the particular crime for which the arrest was made. Id. at 234-35, 94 S.Ct. 467. Ultimately, the Supreme Court concluded that it was the “lawful arrest” itself that provided the authority to search, and that the search conducted in Robinson was reasonable under the Fourth Amendment. Id. at 235, 94 S.Ct. 467.
In the context of this case, Robinson is more notable for its facts than for what it said. Despite the Supreme Court’s broad language, the search in Robinson was unremarkable. The “full search of the person” involved only a pat down and an examination of the contents of Robinson’s pockets, not an invasive search to retrieve biological material from within his body. See id. at 222-23, 94 S.Ct. 467; see also Illinois v. Lafayette, 462 U.S. 640, 645, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983) (stating that “the interests supporting a search incident to arrest would hardly justify disrobing an arrestee on the street”).
Any doubt about the bounds of Robinson vanished after Riley v. California, — U.S. -, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014), when the Supreme Court confirmed that, when it refers to a search of a person incident to arrest, as in Robinson, it is-talking about personal property — that is, evidence — found on a person. In Riley, a case involving the digital content of cell phones, the Supreme Court reviewed the history of the search-incident-to-arrest exception. Id. at -, 134 S.Ct. at 2482-84. After discussing several cases, the Supreme Court turned its attention to Robinson. Id. at -, 134 S.Ct. at 2483-84. It explained that, four years after Robinson, it “[had] clarified that [the search-incident-to-arrest] exception was limited to ‘personal property ... immediately associated with the person of the arrestee.’” Id. at -, 134 S.Ct. at 2484 (quoting United States v. Chadwick, 433 U.S. 1, 15, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (emphasis added)); see also Robinson, 414 U.S. at 226, 94 S.Ct. 467 (an arresting officer may “search for and seize any evidence on the arrestee’s person” (quoting Chimel v. California, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)) (emphasis added)). The Supreme Court repeated its cautionary note about the proper scope of a search incident to arrest just four paragraphs later when it said that, “while Robinson’s categorical rule strikes the appropriate balance in the context of physical objects, neither of its rationales has much force with respect to digital content on cell phones.” Riley, — U.S. at -, 134 *776 S.Ct. at 2484 (emphasis added); see also id. at -, 134 S.Ct. at 2489 (“A conclusion that inspecting the contents of an arrestee’s pockets works no substantial additional intrusion on privacy beyond the arrest itself may make sense as applied to physical items, but any extension of that reasoning to digital data has to rest on its own bottom.”). Given Riley’s clarification that Robinson applies only to physical evidence found on a person’s body — and not digital content' found on cell phones — the only logical conclusion is that the removal of breath (or blood or urine) from the body to discover an arrestee’s blood alcohol level is not part of a search incident to arrest.[1]
The court nevertheless reads Robinson as authority for conducting any search of an arrestee, even one that collects material from within a person’s body. In doing so, the court fails to address two flaws in its approach. First, molecules of ethanol (C2 H60) in a person’s blood are not “physical objects” in the same sense as a “crumpled up cigarette package,” see Robinson, 414 U.S. at 223, 94 S.Ct. 467, coins, see Chimel, 395 U.S. at 754, 89 S.Ct. 2034, or a bag of cocaine, see Arizona v. Gant, 556 U.S. 332, 336, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). It seems obvious that, similar to the digital content of a cell phone, alveolar “deep-lung” air “differ[s] in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee’s person.” See Riley, — U.S. at -, 134 S.Ct. at 2489.[2]
*777 Second, the court fails to acknowledge that a search incident to arrest is limited to evidence found on an arrestee’s body. Typically, a person taking a breath test must insert a tube into his or her mouth and then comply with the officer’s instructions to blow into the tube at a specified rate until the breathalyzer has had sufficient time to analyze a sample of deep-lung air. See, e.g., California v. Trombetta, 467 U.S. 479, 481, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) (describing requirements for administering the Intoxilyzer). Failure to produce an “adequate ... sample” is punishable by up to 7 years in prison. See Minn.Stat. §§ 169A.20, subds. 2-3, 169A.51-52 (2014). The court does not cite a single Supreme Court case authorizing such a profound intrusion into a person’s bodily integrity during a search incident to arrest. Cf. Skinner, 489 U.S. at 616-17, 109 S.Ct. 1402 (recognizing that testing deep-lung breath, like conducting a blood test, raises “similar concerns about bodily integrity”); King, - U.S. at -, 133 S.Ct. at 1989 (Scalia, J., dissenting) (“I doubt that the proud men who wrote the charter of our liberties would have been so eager to open their mouths for royal inspection.”). The reason is that no such case exists.
A warrantless search is unreasonable unless it falls within a specific exception to the warrant requirement. Riley, — U.S. at -, 134 S.Ct. at 2482. Instead of acknowledging that its decision repudiates longstanding Fourth Amendment principles, the court responds by saying that the Supreme Court has never explicitly forbidden the particular type of warrantless search at issue in this case. Such reasoning, however, turns the warrant requirement on its head, allowing it to serve as a presumption in favor of warrantless searches rather than as a safeguard against them.
B.
The court’s second assumption is equally extreme: that the rationales for the search-incident-to-arrest exception — officer safety and preventing the destruction of evidence — do not apply to searches of a person. Again, the court’s assumption is in conflict with Supreme Court precedent.
In Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Supreme Court considered whether an arrest of a person in his home permitted the police to search the entirety of the arres-tee’s three-bedroom home, including his attic and garage. The Supreme Court invalidated the search and identified the two rationales that support searches incident to arrest: protecting the safety of officers and preventing the concealment and destruction of evidence. Id. at 762-63, 89 S.Ct. 2034. Those rationales allow an arresting officer, without a warrant, to (1) “search the person arrested in order to remove any weapons,” (2) “search for and seize any evidence on the arrestee’s person in order to prevent its concealment or destruction,” and (3) search in “the area into which an arrestee might reach.” Id. (emphasis added); see also Riley, — U.S. at —, 134 S.Ct. at 2483 (quoting Chimel, 395 U.S. at 762-63, 89 S.Ct. 2034). The court now contends, however, that neither rationale applies to a search for evidence on an arrestee’s person, but only to searches of the area under the arrestee’s immediate control.
As support, the court seizes on Riley’s acknowledgement of “Robinson’s admonition that searches of a person incident to arrest, ‘while based upon the need to di *778 sarm and to discover evidence,’ are reasonable regardless of ‘the probability in a particular arrest situation that weapons or evidence would in fact be found.’ ” — U.S. at -, 134 S.Ct. at 2485 (quoting Robinson, 414 U.S. at 235, 94 S.Ct. 467). The court references this statement as proof that, “far from overruling or narrowing Robinson, the [Supreme] Court [in Riley ] recognized again Robinson’s ‘categorical rule’ allowing a search of the person of an arrestee justified only by the custodial arrest itself....”
The court misinterprets Robinson, and entirely ignores the remainder of Riley, including its holding, which “decline[d] to extend Robinson to searches of data on cell phones” based on the rationales from Chimel. — U.S. at -, 134 S.Ct. at 2485. As the Supreme Court explained, Robinson rejected the need for “case-by-case adjudication” to determine whether the Chimel rationales were present in a “particular arrest situation.” Id. at -, -, 134 S.Ct. at 2483, 2485; see also United States v. Chadwick, 433 U.S. 1, 14-15, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (explaining that Robinson eliminated the need for an arresting officer “to calculate the probability that weapons or destructible evidence may be involved” before conducting a search incident to arrest), abrogated on other grounds by California v. Acevedo, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). But neither Robinson nor Riley rejected the Chimel rationales as bookends for the circumstances under which the search-incident-to-arrest exception applies.[3] See, e.g., Knowles v. Iowa, 525 U.S. 113, 119, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998) (rejecting the search-incident-to-arrest exception in the context of issuance of citations, “a situation where the concern for officer safety is not present to the same extent and the concern for destruction or loss of evidence is not present at all.”). After all, the Supreme Court framed the question in Riley as “whether application of the search incident to arrest doctrine to this particular category of effects would ‘untether the rule from the justifications underlying the Chimel exception.’ ” Riley, 134 S.Ct. at 2485 (emphasis added) (quoting Arizona v. Gant, 556 U.S. 332, 343, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009)).
More broadly, it is clear that the court needs to cast aside the Chimel rationales to reach its decision today. The only justification for allowing police to conduct a warrantless breath test is the preservation of evidence due to the natural dissipation of alcohol from a person’s bloodstream. In McNeely, however, the Supreme Court specifically rejected the proposition that the natural metabolization of alcohol constitutes a per se exigency justifying a war-rantless blood test. — U.S. at -, 133 S.Ct. at 1568. It explained that blood alcohol testing
is different in critical respects from other destruction-of-evidence cases in which the police are truly confronted with a “ ‘now-or-never’ ” situation. In contrast to, for example, circumstances in which the suspect has control over easily disposable evidence, BAC evidence from a drunk-driving suspect naturally dissi *779 pates over time in a gradual and relatively predictable manner.
Id. at -, 133 S.Ct. at 1561 (internal citations omitted). The Supreme Court then made clear that officers are required to get a warrant to test a suspect’s blood alcohol content if they can reasonably do so under the circumstances. Id. at -, 133 S.Ct. at 1561-63; see also Riley, — U.S. at -, 134 S.Ct. at 2495 (stating that the answer to “what police must do before searching a cell phone seized incident to arrest is accordingly simple — get a warrant”). It strains credulity to suppose that, after the Supreme Court carefully examined the exigent-circumstances exception in McNeely, it would conclude in some future case that the search would have been justified anyway under the search-incident-to-arrest doctrine, which according to Chimel and Riley turns on the same rationale regarding the preservation of evidence that the Supreme Court explicitly rejected in McNeelys See — U.S. at -, 133 S.Ct. at 1557 (noting that McNeely was under arrest when the blood test was performed); see alsó State v. Villarreal, — S.W.3d -, -, 2014 WL 6734178, at *15 (Tex.Crim.App. Nov. 26, 2014) (holding that the search-iiicident-to-arrest exception “is inapplicable” to a warrantless blood draw because neither of the two Chimel justifications applies). In fact, by casting aside Chimel’s rationales and creating a novel bright-line rule, the court simply readopts a per se exigency under a different name. See State v. Shriner, 751 N.W.2d 538, 549 (Minn.2008) (establishing the evanescent nature of alcohol in the bloodstream as a single-factor exigency), abrogated by Missouri v. McNeely, - U.S. -, 133 S.Ct. 1552, 1558 & n. 2, 185 L.Ed.2d 696 (2013) (no such single-factor exigency exists).
II.
The only remaining question is whether the test-refusal statute, which requires a person to submit to a breath, blood, or urine test upon suspicion of drunk driving or face stiff criminal penalties, is constitutional. See Minn.Stat. §§ 169A.20; 169A.24; 169A.25; 169A.26 (2014) (making the crime of test refusal a first-, second-, or third-degree driving-while-impaired offense depending on whether an aggravating factor is present). We conclude that, in Bernard’s case, it is not.
In Camara v. Municipal Court of S.F., 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), the Supreme Court held that a state cannot criminalize the refusal to consent to an illegal warrantless search. Id. at 540, 87 S.Ct. 1727; see also See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1741, 18 L.Ed.2d 930 (1967) (companion case). The appellant in Camara was charged with a misdemeanor offense when he refused to allow housing inspectors to enter his residence to conduct a search of the premises without a warrant. 387 U.S. at 525-27, 87 S.Ct. 1727 . The prosecution arose out of a San Francisco ordinance that allowed certain “[ajuthorized employees” of the City to “enter, at reasonable times, any building, structure, or premises in the City to perform any duty imposed upon them by the Municipal Code.” Id. at 526, 527 n. 2, 87 S.Ct. 1727. Once the Supreme Court concluded that the search was illegal, it held that the “appellant had a constitutional right to insist that the inspectors obtain a warrant to search and that appellant may not constitutionally be convicted for refusing to consent to the inspection.” Id. at 540, 87 S.Ct. 1727.
• There are, to be sure, instances in which it would be constitutional to apply the test-refusal statute to impose criminal penalties on suspected drunk drivers who refuse a blood, breath, or urine test. But those instances are limited to circumstances in which the underlying search would be con *780 stitutional, such as those identified in McNeely when, under a totality of the circumstances, it is unreasonable for officers to obtain a warrant. McNeely, — U.S. at -, 133 S.Ct. at 1561. The State does not argue in this case that it was unreasonable for the officers to obtain a warrant under the totality of the circumstances. Accordingly, because the search in this case was not a valid warrantless search, and the State may not constitutionally convict persons who exercise their “constitutional right to insist that [police] obtain a warrant,” Camara, 387 U.S. at 540, 87 S.Ct. 1727, we would affirm the district court’s decision to dismiss the two counts of test refusal against Bernard.
For the foregoing reasons, we respectfully dissent.

. One could point to the Supreme Court's recent decision in Maryland v. King, - U.S. -, 133 S.Ct. 1958, 186 L.Ed.2d 1 (2013), as support for the warrantless breath test at issue in this case. After all, in King, the Supreme Court upheld a warrantless search by which jail officials used a buccal swab to collect DNA from an arrestee under a Maryland statute. Id. at -, 133 S.Ct. at 1980. The statute, the Maryland DNA Collection Act, required officers to collect a DNA sample from arrestees charged with serious crimes, but critically, the Maryland law did not subject the collection requirement to the discretion of officers. Id. at -, 133 S.Ct. at 1970. The Supreme Court sanctioned the warrant-less search in King as a routine booking procedure, not as a search incident to arrest. Id. at -, 133 S.Ct. at 1971, 1977. King therefore does not permit a warrantless search, as here, when officers have discretion to conduct the search based on individualized suspicion and concerns about evidence preservation, rather than on an administrative interest in identifying the arrestee.
Likewise, Skinner v. Railway Labor Executives’ Ass’n, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), although at least involving a breath test, is a case that arose under a different branch of Fourth Amendment doctrine. In Skinner, the Supreme Court upheld a warrantless breath test for railroad employees who worked in a "regulated industry" and had effectively "consent[ed] to significant restrictions in [their] freedom of movement where necessary for [their] employment.” See id. at 624-25, 628, 109 S.Ct. 1402. The triggering event for the breath test conducted in Skinner was a "major train accident,” not an arrest, and its purpose was safety, not prosecution. Id. at 609, 621, 622 n. 6, 109 S.Ct. 1402. Skinner was, in other words, a "special needs” case, and like King, the Supreme Court recognized that it was departing from "the usual warrant and probable-cause requirements” applicable to law enforcement. Id. at 620, 109 S.Ct. 1402 (quoting Griffin v. Wisconsin, 483 U.S. 868, 873-74, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987)). In this case, the State has not identified a "special need” for the warrantless breath test it sought to administer to Bernard.

. Even if breath can somehow be considered a "physical object” that is "personal property,” any breath test that could have been performed in this case would still not qualify as a search incident to arrest because it would have been "remote in time or place from the arrest.” United States v. Chadwick, 433 U.S. 1, 15, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (quoting Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 111 (1964)), abrogated on other grounds by California v. Acevedo, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). In fact, that is precisely what the Texas Court of Criminal Appeals, the court of last resort for criminal matters in Texas, recently recognized in the *777 context of a blood draw. See State v. Villarreal, - S.W.3d -, -, 2014 WL 6734178, at *15 (Tex.Crim.App. Nov. 26, 2014) (quoting Chadwick, 433 U.S. at 15, 97 S.Ct. 2476).

. In fact, in an opinion concurring in part and concurring in the judgment, Justice Ali'to wrote separately to advance a variation on the court's argument today: that “the [search-incident-to-arrest] rule is not closely linked to the need for officer safety and evidence preservation” because “these rationales fail to explain the rule’s well-recognized scope.” Riley, - U.S. at -, 134 S.Ct. at 2496 (Alito, J., concurring). Whatever the merits of Justice Alito's argument, it is notable that no other member of the Supreme Court joined Justice Alito’s concurrence, and that the majority opinion in Riley continued to adhere to the two rationales from Chimel.